Mr. Karras, the appellant. Counsel? Good morning, my name is Jake Kraske. I represent the Appellate League for Catholic Bishops of Chicago. Very good. I can assure you that we've read the briefs. We're familiar with the pertinent portions of the record. It's an interesting case. Each side has 15 minutes, but we don't look at our watch. You're the only case we have up today, so take your time. We won't cut you off, I promise. I'd like to somehow save five minutes for rebuttal. You certainly may, Mr. Karras. Anytime you're ready, Mr. Karras. May it please your honors, the interesting issue here is whether or not there's a difference between adverse possession and an easement, a prescriptive easement. It goes back a long way. In a law review article which the bishop has put into his appendix, it goes back to the Emperor Theodosius in Roman times. There is this difference in the English law, a difference in our law. The question is, what do you have to have for adverse possession and what do you have to have for an easement? In this case, it's conceded for the purposes of this motion for summary judgment that Karras and the restaurant there have used this easement property for 20 years. The property is nine feet wide and 30 feet long. He hasn't had the exclusive use of it. He has used it for the back entrance to the restaurant. A restaurant must have a back entrance to be a restaurant. You can't take the garbage out the front door. The city gets... They have a side door, though, don't they, Mr. Karras? You can't have the customers and the garbage in the same place, even though the customers are the fault of the garbage. But that's still how it is. So a restaurant has to have a back door. Now, over the many years, over the 20 years, this back door has been used by this building, and that establishes an easement by prescription if we prove it. Now, we didn't prove it yet. You're saying they didn't have the exclusive use of this walkway, Mr. Karras? Now, that's the point that's the difference between adverse possession and an easement. Now, for adverse possession, you have to deprive the owner of any possession at all of the property. They cite the case of Morris, the Morris case, Morris v. Humphreys, I believe, cited in their brief and also cited in the Steele Rule case, which is their big precedent. And that case holds that in an adverse possession case, as do all cases hold this way, that you must actually deprive the owner of possession. Now, in the Morris v. Humphreys case, the deprivation was by tearing down a fence, building a new fence, planting a crop, chopping down the other fellow's crops. That is extraordinarily active adverse possession, and that was held to be that. An easement is a different animal, a different thing altogether. An easement is the right to use the property for the purposes of the easement only. And the fact that the owner also uses the property does not or should not defeat the easement. Now, we have two cases in the first district which say, let's start off with this absolute possession argument, that you have to have that for an easement. And you don't. It does say it, though. In the Chicago Steele Rule case, the court said hostility of possession requires an intent to claim the fee as against the true owner and all others. And one's claim to the fee is demonstrated by using and controlling the land as an owner. This is language that is used for adverse possession. The case goes on to say the claim must be hostile from its inception, continue for the statutory period. Now, that's fine, but that's adverse possession. The Steele Rule case was not an adverse possession case, nor was the Riddella case. And those are the only two cases that contain this kind of language in the first district that relates to what could be said to be an easement. All of the other Illinois cases and, indeed, most of the cases ever decided anywhere that my opponent did a magnificent job of researching other jurisdictions and has presented that to you in his appendix. The cases simply do not say that the possibility that an owner walked on the easement destroys the easement. Now, in this case, it is a position taken by the bishop that if the bishop, we cannot deny that the bishop walked across this easement. They did a 216 request to admit. And I don't know where the bishop's been. We don't have a police guard out there guarding the easement to keep anybody off. It doesn't interfere with our use if the bishop, and the bishop is a corporation soul. I don't mean the bishop personally. But the bishop's person walks across the easement. That should not destroy the easement. But that is the ruling of the lower court, was that the fact that Karras could not, in a pleading, deny the possibility that the bishop walked across this easement destroys the easement. Now, it shouldn't and it doesn't. We cite, I guess, five or six cases, Illinois cases, where clearly the owner of the property used the easement area and used it frequently and often. The weighty case, the owner of the Soviet estate was a railroad. And the railroad ran trains up and down the track every day and right across the easement. It didn't destroy the easement. We don't have any allegation here that the bishop had a schedule for walking on this property. But the bishop could have. And we can't say he couldn't have because we don't track the bishop or his agents. And so you have here an argument that you have an easement, not much bigger than from here to the window, and a bishop or his agent, one time in 20 years, walked across that easement. And that destroyed the easement. That destroyed the 20-year period. Now, you have to have 20 years. In the Rodella case, it was 15 years, but that involved a prescription of a streak, which is a separate statute. But 20 years is the same period of time you need in order to establish your right to property by way of adverse effects. Exactly. That it's a similar, the time, the temporal requirement is the same. The temporal requirement is the same for both. And that's because it arises out of a statute of limitations. But it's your position that you don't need exclusivity in order to establish an easement. You don't. That's your position. That is, it's not only my position. It's not a personal position. It's the position of a very fine law review article the council cites. It's a position of the actual holding in case after case. Now, the Chicago Steel Rule case versus Milan doesn't hold to the contrary, because that case turned on the fact that the city condemned the property in the 17th year. Well, if you don't have the 20 years, you don't have the 20 years. It's like the statute of limitations. It's like a lot of things. You don't have it. You don't have it. So they didn't have the 20 years in the Chicago Steel Rule case. In the Rodella case, which is this Plains versus Rodella, they didn't uphold the summary judgment. They reversed it and sent it back for a trial on the use of the street that was at the end of a subdivision, whether or not who had been using it and whether or not it had been used over the 15-year period. But there's no question here, right, Mr. Collins, as to down below it was agreed among the parties that they would concede that the restaurant's been using this continually for 20 years, and your parties agreed that they could not say, would not say, that the bishop or people from the bishop had not used it for 20 years, right? It wasn't quite put that way. First of all, it was agreed that Carus's parties used it on a daily basis or five, six times a week. They asked us to say, to admit or deny in a 216, that the bishop never walked on the property, never walked over it, and that's how it was put. So their position is that one walk over this property by the bishop in 20 years destroys the easement. And that's how it sits. Now, it's a summary judgment. It's a one-issue summary judgment that's about as big as a dime. There are a lot of facts in the case. A lot can be done with the case. But none of that was done. Are you asking us to send it back just for more evidence on whether or not the bishop or his people used the sidewalk or the alley? Well, that wouldn't, if they used it exclusively against us, that would certainly be an issue. But there are many. Well, I can see they didn't. It's clear that your people used it infinitely more than they did. Yes, that is very clear. So is there a reason we should send it back for further evidence on that issue? There's evidence on many issues. Do we really have the 20 years? The bishop admitted the 20 years for the purposes of our argument. My opponent, who is here today, did not say that we stipulate for all time and all purposes that you have 20 years' use. He said for the purposes of this argument, you have 20 years' use. Now, it would not give deference to the facts if it was sent back and just say grant the easement because they have the right to present proof and we have the right to present proof on the actual use. So if we agree with your argument, we should send it back. If, however, we don't agree with your argument, we agree with theirs, that Illinois follows the minority view on the area of easements, we would not send it back. That's right. That's right. The summary judgment was entered. If the summary judgment is affirmed, it doesn't go back. And it's not really the minority view. They talk of the minority view. But if you analyze the minority view cases, they're really quite different from this case. You have cases in which the underlying owner made a principal use of the easement area and the use by the, shall we say, trespasser was incidental. So it doesn't quite work like that. If they prove that we didn't have 20 years, then we're like the Chicago Steel Rule case. We don't have 20 years. You lose. That's all. It's not a problem. If we don't show that we used it continuously for that 20 years, we lose. And we have to prove that. There's a presumption from 20 years of use that's in one of the cases they cite. I think it's the Lane case. That 20 years was adverse. There is that presumption. But it's a rebuttable presumption. So you would have here a trial on factual issues far beyond this one thing of did the bishop walk across this easement. There are a lot of facts to be decided. I'm not promising that we would win because I don't make promises like that. But that's still a case that needs to be tried. It should not be done on that one item. Wasn't there an admission by your side that the Catholic Church did indeed probably use the property? I admit that. I admit that they probably walked across it. It would be hard not to walk across it. It's from the building to the street, and there's a sidewalk there that's owned by the bishop but is part of the easement property for the limited purpose of the easement. And I can't imagine somebody from the bishop's office didn't walk up and down that street. It's right next to the cathedral. And a lot of the priests eat at the tapas restaurant. And so to go from where they are to the tapas restaurant, there are priests that have to cross the sidewalk part of this easement. And so, you know, it's one thing to make factual statements to a judge, but we have an intelligent judge, a very capable judge, who is sitting there. And I'm not going to say to him, no, it's not possible for 20 years that some bishop person did it. It's not that I'm honorable. It's that I'm scared of being caught out, I guess. But you just don't say things like that. And so I am sure that I know for sure that the people from the bishop's office eat at the tapas restaurant because you see them there. And so they do. They walk not up and down this strip, but they walk across the end of it. And that probably happens every day or once a week or twice a week. However, often they want Spanish food, which they seem to like. Is it your position, Mr. Collins, that you can establish an easement by possession if your client and the bishop jointly possess this walkway? The bishop owns the land, and possession is not an issue in an easement case. Possession is an issue in a case of adverse possession. But in a case like this, the fact that the bishop walked across it, we contend, should not ruin the easement. Now, there's a limitation on easements found in a case that we cite called Limestone. And that is that the easement is only good for what you've been using it for for the 20 years. In Limestone, the easement was used as a way to go to a swimming hole next to the canal. And it was also used to people who would come and visit people who were squatting in shacks next to the canal. The Limestone Development Company decided to make a big marine out of it, so they started using the easement for big trucks and front end loaders and all the stuff you do when you dig out a big area to make a swimming pool. And they got stopped because they were using the easement beyond the 20-year use of the easement. Now, the restaurant does not drive vehicles on this easement. It doesn't bring trucks in. It may be too narrow for a truck, but you could bring some kind of vehicle in there. They don't do that. The easement is defined by the use, by the use of the easement. And the use of this easement has been, as we state, for the garbage out and deliveries in. That is the use of the easement. To go beyond that use is not authorized and is not something we ask for. And also under the limestone case, it's not something we could get. But even that minimal use is certainly, I don't want to call it a cloud on the title since it's a term of art, but if they want to sell this property, it hurts them a lot to have this easement on it. It does. It does. They say it does. There's nobody to sell it to right now, but there will be someday, I hope. But that is their detriment. And our detriment is you close up a business and put people out of work. There is a side door, though, right? I mean, I asked that earlier. The door is there. There's a front door and a side door. There's a front door and there's a side door. You could use the building for an office building or theoretically a residence, I suppose, but you couldn't use it for a restaurant without the side door. And it was, it would not be, there's economics both ways. There's a heavy economic interest in Caris being able to rent it for the kind of use that you find in that area, which is good restaurants and places of entertainment. The bishop's use is to have it part of a block. But the bishop hasn't said to us, okay, now we've got a block to sell. And if you're on economics, consider this. If you look at the square footage of this bishop's property, it's about 4,100. That's not enough, really, for a high-rise building. You combine that with Caris's property, and the two properties together are enough for a high-rise building. Now, in ordinary parlance, there's a deal there to be made of combining the properties and building a high-rise building. But the fact is that neither can really develop without the other. Even if we lost the easement, they wouldn't own Caris's property. And both parties have known that forever. So they'd rather be here than work it out. So we penalized the church for being a good neighbor, for allowing the person to walk across their land, to empty their garbage, when, in fact, they could have used the door or could have broadened the door. Many years ago, the Honorable Thurgood Marshall asked me, how can you contend, Mr. Collins, that the mafia should be allowed to take over a bank? And I thought maybe I was losing the case at that point, and I did. But the church and all other neighbors under the law must protect their property against the accretion of such easements as this. It's part of what you do. You have 20 years in order to interrupt it. Now, in the Chicago Steel Rule case, they interrupted it at 17 years. And 17 doesn't mean you go do 17 years and then it's interrupted, then you pick up the other three later. It gets interrupted. It's over. Now, they posted a sign that's in the record. It's not in any of the briefs. They posted a sign well after the 20 years was up saying don't come here, you know, trespass forbidden. But the goodness of the church is not doubted. I can't say that I don't respect the church. I dare not say that. But the fact is that the church is a real estate-owning entity. They look after their own interests. They have lawyers, good lawyers. They have property managers. They did not do what is required to break the 20 years. Were they good neighbors? They weren't bad neighbors. They were just neighbors. In the city, people are next to each other and they don't necessarily interact. There's no intention of being disrespectful to the church. They educated my children. I can't be. But that still doesn't give them a right different from that of a man who owned a garbage dump or a scrapyard. Whoever it is that owns property next to other property has the same obligations. And, you know, our law is equal, equal, all parties are equal, even if they are not morally equal. There's no immorality here on either side, but, of course, greater morality on the side of the church, I would think. But that doesn't give them an edge, or it should not give them an edge. I want you to give me five minutes for reply unless you had something else.  Thank you, Judge. Mr. Dabrowski? May it please the Court again, I am Jay Dabrowski representing the appellee today, the Catholic Bishop of Chicago in Illinois Corporation, Seoul. What's really at issue in this appeal is the Catholic Bishop's right to control its own property, property that it owns, to use that property and develop it for its best and highest use, whether that means developing it itself or selling it for achieving that best and highest use. And it has that right to control and dispose of its own property, free and clear of any invalid cloud on its title to that property. What happened here is that the defendant, Mr. Karras, who has also expressed interest in purchasing this very valuable piece of downtown property at 38 East Superior, recorded a claim purporting a prescriptive easement, a right of use, an exclusive right of use, over a walkway running from Wabash Avenue across the Catholic Bishop's property up to the side of the building that Mr. Karras owns on the adjoining lot. As the circuit court correctly ruled below, Mr. Karras' prescriptive easement claim failed to satisfy the necessary element of exclusivity. And it failed to do so because, as Mr. Karras admitted on the record below and admitted here today in oral argument, he cannot establish that the Catholic Bishop was altogether deprived of its use, of its walkway on its property for the duration of some 20-year period that would give rise to the prescriptive easement right that Mr. Karras is claiming. The very firmly established rule in Illinois requiring that a prescriptive easement exclude the rightful titleholder entirely from the use of the property is necessary to ensure that a landowner doesn't lose control of his property due to some unintended or involuntary transfer of a very critical interest in that property. Now, when Judge Martin entered his order of summary judgment in favor of the Catholic Bishop, the order declared, it was a declaratory judgment action, the order declared the recorded prescriptive easement claim of Mr. Karras void and ordered the defendant to record a release of that claim. Of course, that order was stayed pending this appeal, but what it means is that since July 10, I'm sorry, July 30 of 2010 when that order was entered, the Catholic Bishop's use, development, right to control its own property has been restricted and limited for that entire time. When you say that it's clear or very well settled to obtain a prescriptive easement in Illinois, you have to, the person who wants that easement has to prove up exclusivity against the owner. What's your best Illinois Supreme Court case on that as opposed to Chicago Steel and Des Plaines at all? The best two cases, and I'm not aware of an Illinois Supreme Court case directly on this point, but the best two cases are right out of this court, and that's Chicago Steel Rule and City of Des Plaines. And there is no ambiguity about the law in Illinois as stated twice in those two cases. In Chicago Steel Rule, the court stated very clearly that the elements for establishing a prescriptive easement are exactly the same as they are for adverse possession. With this one difference, in an adverse possession case, the exclusivity element requires you to entirely deprive the true landowner of possession of whatever property is at issue. But the court was clear that in a prescriptive easement case, the critical deprivation is use of the property. And when the court turns to the facts before it, it uses the words use or possession. City of Des Plaines does the same thing. The exclusivity must be as to use or possession depending on the interest that's being claimed. If it's adverse possession, it has to be possession. If it's prescriptive easement, it has to be the deprivation of use. There's absolutely no ambiguity in those two cases. And I want to be clear about Chicago Steel Rule because counsel for defendant today suggested that it wasn't decided on that issue, but it absolutely was. What was before the court was an order of dismissal based on Rule 2615, failure to state cause of action. And what the court said there in its holding is that the failure even to allege that the rightful owner had been altogether deprived of its use of the property was fatal to the case. It went on to notice that there was also a 2619 basis because the 20-year period had been interrupted in year 17 by a condemnation proceeding. But the primary basis for the court's ruling in that case was just failure to even state a cause of action for the failure even to allege this necessary element, that you must show that the true landowner has been altogether deprived. The City of Des Plaines was a summary judgment case. And in that case, the court reversed summary judgment saying there were questions of fact. What was the first question of fact that the court raised as grounds for reversing the summary judgment? Again, just as in Chicago Steel Rule, the failure even to allege the necessary and critical element that the lawful owner was altogether deprived of its use. So Illinois law is well established. It's well established by these two cases out of this court. That's the rule in Illinois. I think I heard defendants' counsel say this morning that it shouldn't be. And if I was in defendants' shoes, I may think it shouldn't be either. But the standard is high and the standard is properly high because the interest is a critical one. The interest is the right to dispose of your own property. I think the briefs of the defendants suggest that use is a more casual claim and it doesn't really interfere with the true landowner's rights. In fact, it interferes in exactly the same way that an adverse possession claim would interfere. This is a claim that's been recorded with the Cook County Recorder of Deeds. It is a cloud on title. If this claim was valid, it would be there until it could be extinguished. And the grounds for extinguishing an easement once established are extremely high. Will joint use prevent you from establishing a prescriptive easement? Yes, Your Honor. The court in Chicago Steel Rule was very clear on that. Ties go to the true landowner. If use is shared, what that suggests is that use is permitted, and use is shared in this case. The Catholic bishop has allowed Mr. Karras to use his walkway. In fact, in 2006, he offered him a license to use his walkway. And Mr. Karras' counsel at the time said, well, why would I want a license which is revocable? I have an easement. I have a prescriptive easement. I have this right forever or until you extinguish it. And how does one extinguish a prescriptive easement? It can take 20 years. You can do it just in the way it arose. You can establish your own right over 20 years because now that interest is your neighbor's interest. It's not yours anymore. Your neighbor can abandon it, but that seems unlikely. If someone took 20 years to create a right, but they're just going to abandon it. Or you can release it through an arm's-length negotiation. But here, in a case where Mr. Karras has interest in the value of this property, it's easy to see that any release would be prohibitive. Mr. Karras would determine the terms for releasing that. So the cases are very clear that shared use destroys a prescriptive easement claim. And, again, it's right that the burden is high because of the interests that are at stake. And it's right that once they're in place, the burden is high in order to extinguish it. But here, the record is very, very clear, and I think it's been made even clearer here today, that the defendant admits they cannot establish that the Catholic bishop was altogether deprived of its use of this property and even goes so far as to concede that the Catholic bishop did use its property. And I think it's worth looking at the record that the circuit court made its decision on. Going back to the first amended complaint, the Catholic bishop alleged, at no relevant time has the Catholic bishop been altogether deprived of the use of the walkway. And here is the defendant's answer. The nature of the easement does not deprive the bishop of access to or across the easement property. This is just one in a series of statements where the defendant admits that the use hasn't been exclusive, admits that, to the contrary, it's been shared. After that, requests to admit were issued, and the request was, admit that the Catholic bishop has used the walkway during the easement period. And the response to that was, the defendant has no knowledge of any use of the easement by the Catholic bishop. Again, the defendant has no evidence, no information to put forward, that the Catholic bishop has been excluded. Counsel said this morning that, I believe that the Catholic bishop didn't do anything to let Mr. Karras know that his use wasn't exclusive, besides the fact of physically sharing the walkway. But that gets the duty and the burden exactly wrong. It's Mr. Karras's claim. It's his prescriptive easement claim. He's the one who needs to exclude the true landowner, who needs to exclude the Catholic bishop from using the walkway. And really, what's at issue there, the reason for that, is it's a matter of notice. If you're claiming such a right over a neighbor's property, and when they try to use what you think you have an exclusive right to, or a right to that excludes them, you need to exercise that right. You need to make it clear. You need to put them on notice that, hey, as far as I'm concerned, this is no longer yours. I'm asserting my right over it. That puts the landowner on notice. That gives him an opportunity to say, I'm in danger of losing a critical interest in my own property. I'd better do something about it. Unless, of course, the landowner doesn't care, or has abandoned his property, or has abandoned that part of his property. And I think in some of the older cases, which involve large tracts of farmland, where an adjoining landowner claims a right over some corner, or right of access or something, it may have been less critical, and landowners may, in some cases, abandon that interest, not care. We're talking about prime downtown Chicago real estate. The Catholic bishop does care. The Catholic bishop shared use of the walkway, but at no time was put on notice that it was in danger of losing its rights over this part of its property altogether, which makes the property unmarketable. Getting back to the record that the judge decided summary judgment on below, there were several in-court judicial admissions that we cited in our brief. At various times in arguing this issue, counsel for defendants said, the Catholic bishop can use the walkway, and probably does. We've heard something much to the same effect this morning. Obviously, if the Catholic bishop wishes to walk this alleyway, he can. And again, the Catholic bishop, of course, owns the road. They can walk upon it. So, again, the record is replete with references. Defendant doesn't really question that the use was shared. What defendant seems to question is what the law is on that use, and the law on that use is very, very clear. Exclusivity has to be shown by altogether depriving the true landowner of his use. Can even go back to the very document that was recorded asserting this claim, and on its face it says, again, as we heard again this morning, it's one of the first things counsel said this morning, it is for the non-exclusive use of the walkway. That's in the record at C-489. I believe it's the second page of the actual claim of easement. That claim of easement also says that the use is permitted by the Catholic bishop. It acknowledges permission, another statement that defeats a critical element of a prescriptive easement claim, that it can't be with permission. It has to be with the knowledge of the true owner, but can't be with his permission. But right off the bat, we have a document recording an interest in the Catholic bishop's land that on its face says it's ineffective, it's invalid to the extent it's claiming a prescriptive easement because it's non-exclusive. And again, in its reply brief before this court, the defendant says on page two of his reply brief, Harris cannot allege that the bishop never walked across the narrow walkway that is the easement property. So that obviously wasn't before the trial court, but all of those other admissions were. The key ones are the answer in the complaint and the answer on a request to admit. And on that basis, Judge Martin decided that summary judgment had to be granted in the Catholic bishop's favor. There's one element here. This panel asked counsel for defendant this morning, isn't it that you just want to go back and put forward new evidence or more evidence? And I think the answer to that question, in effect, was yes. But summary judgment means if you can show as a matter of law that you're entitled to judgment on a dispositive issue, then you're entitled to summary judgment. No matter what someone may say, come back another day and say, well, I could put forward more evidence now or I could try this case on different issues. I didn't take Mr. Collins' argument to be that maybe I'm wrong. I'm speaking just for myself. I think it was pointing out to us that if we reverse the summary judgment, his client doesn't necessarily win, which is always a good thing to remind judges that it's not over. Whatever you do, we rule one way, your way, it is over. If, however, we rule for him, you still have a battle down below and perhaps your rights will be vindicated. I think that's what he's arguing. Well, that's true, Your Honor, and I didn't mean to state more than that. But even cases, adverse possession cases, they can be very fact-intensive. There's several elements, and there are a lot of facts, you know, given the case that can be relevant and dispositive to the final issue. But in this case, the defendant admitted that on one critical element, he could not establish his claim. No, I'm not. Not as far as the summary judgment motion goes. There is no fact in dispute. Because, again, as I just demonstrated again and again and again, this defendant admitted three times under oath, if you count the answer, the response to the request to admit, and the claim of easement, which is a sworn document, that the use is non-exclusive, that absolute deprivation of use cannot be established. So there is no question of fact on that issue. It only takes one element to knock out a claim of this sort, a prescriptive easement claim. You don't have to go down the rest of the list, permission, hostility, all of the others. You just need this one issue. I'd like to address some of the other Illinois cases that were discussed this morning. I don't think they affect the outcome of this case. The Weedy case, the case involving METRA and the train tracks, that was discussed at great length below, it was discussed at great length in the parties' briefs. None of these other cases address this issue. None of the other cases address the element of exclusivity in a prescriptive easement case. What Weedy addressed was whether or not METRA's interruption in the use of the roadway over its tracks, and it interrupted that use by destroying that roadway. The issue wasn't whether the trains going back and forth had any effect on the easement. It just wasn't raised. The issue was that once METRA became apprised that there was an easement claim, it went and destroyed the roadway, it took it down. And the issue in that case was whether that one interruption was enough to stop the continuous use that needs to run for 20 years. So that court didn't even address the exclusivity issue. It never came up. The limestone case, which does talk about what the proper or permissible scope of use is for a prescriptive easement, the point the limestone case made is what you look to is the use that the easement claimant has made of that part of the land. It has nothing to do with what the true landowner, how the true landowner uses that property. What's critical for our purposes here today is that in that case, the prescriptive easement was already established. Now you're looking at how can it be used? What's the scope of that use? And all the court said was in answering that question, we look at the use that the claimant has made of it, not at the use that the true landowner makes of it. So now one of these other Illinois cases addresses the issue of exclusivity. The cases on that issue are Chicago Steel Rule and City of Des Plaines, and those cases are very straightforward and very clear on what the law in Illinois is. Again, I think the policy underpinnings for this are the interests that are at stake. And again, in the final analysis, a prescriptive easement has the same effect that adverse possession has. It's a cloud on title. It's very difficult to remove once it's there. It's proper that there should be a high burden. The courts and the law disfavor involuntary transfers of land. They favor arm lengths, transfers of land, and that's the reason that the burden is high. It should be high. There's a critical interest at stake. That's really what I have to present with the court this morning. I'd be glad to answer any other questions that may be remaining. Thank you, Mr. Dabrowski. And Mr. Collins, very briefly reply. We have cited in our brief case after case in which the serving owners used the easement along with the easement holder. The Corrubia case, it was an alley. Everybody on the alley had an easement over the rest of the alley. Everybody drove up and down the alley. I think it's Thorwood case. It's an old, old case, but there was an alley, and a man right at the end of the alley decided to block the alley one day and claim there was no valid easement, but the easement ran behind a series of stores that had used it for years to haul away ashes and for wagon traffic. It was held that the easement prevailed, even though the owner of the property himself used the easement along with all the other people. Such are the cases. Now they come up and say you have to show actual deprivation, exclusive use, and so forth. Neither Rodella nor Chicago Steel actually involved such a thing. Neither actually involved a situation like this. In that Chicago Milan construction case, Chicago Steel Rule, the owner paved the property during the period of the 20 years. Then the city took it over and was the new owner. That destroys any idea of an easement because you can't do an easement on the city. It doesn't work. So those cases just don't hold the way that the words say. Now they do have the words from adverse possession cases in them, but those are adverse possession words and there is a difference. It goes back to the emperor Theodosius who has been dead a long, long time. I would contend to you that this case should not turn on whether or not the bishop could have walked across this walkway. He could have because I could have because anyone could have. That should not determine easement. Easement is use, not possession. If you think of it as use, it's only the use that's protected by the law and that's all we see. There is a lot more to be done as your Honor Judge Quinn noted. If the case goes back, it will have to be tried, but we're ready to try it. We're confident that we can try the case and show that 20 years is actual. I would point out also that there is a case that holds that 20 years possession, which they concede, or 20 years use, which they concede, creates a presumption of validity. And so that's one of the things we'll be arguing below. Thank you for your attention.